UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL L. THOMAS, | ) | 1:07-CV-01190 AWI GSA HC |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| A. HEDGPETH, Warden, | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, Hons. Edward Sarkisian and Gary Hoff presiding, following Petitioner's conviction by jury trial on July 29, 2005, of first degree murder and being a felon in possession of a firearm. (LD[1] 1-3.) A special allegation that Petitioner personally discharged a firearm, causing death, was found true. (LD 3.) In addition, the trial court found that Petitioner had suffered a prior serious felony conviction for purposes of the California Three Strikes Law. (LD 3.) On September 27, 2005, Petitioner was sentenced to serve an indeterminate term of eighty years to life in state prison. (LD 3.)

---

[1] "LD" refers to those documents and pleadings lodged by Respondent with his answer.

Petitioner appealed to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). On January 10, 2007, the Fifth DCA affirmed the judgment. (LD 3.) Petitioner then filed a petition for review in the California Supreme Court. (LD 4.) The California Supreme Court summarily denied the petition on March 21, 2007. (LD 5.)

On August 15, 2007, Petitioner filed the instant federal habeas petition in this Court. On November 30, 2007, Respondent filed an answer to the petition. Petitioner did not file a traverse.

## FACTUAL BACKGROUND[2]

On June 2, 2005, Robert Wynne substituted into appellant's case and the public defender was relieved. Trial date remained set for June 27.

On June 16, the trial date was vacated and reset to July 18 at Wynne's request.

On Thursday, July 14, Wynne spoke to the prosecutor and told him that he wanted "to at least trail the thing until Thursday," because a personal situation had arisen and he needed to arrange childcare. It was decided that this matter "would best be handled by [the] Presiding [Judge]."

During the morning of Monday, July 18, the parties appeared for a trial readiness conference before Judge Edward Sarkisian. Wynne held an unreported conference with Judge Sarkisian and the prosecutor during which he disclosed certain "personal concerns" and childcare difficulties. Wynne requested a trial continuance, which was opposed by the prosecutor. When court reconvened, Judge Sarkisian provided Wynne with an opportunity to place on the record "whatever [he] wish[ed] to state" concerning the reason for the continuance request.

Wynne stated that he was "worried about the health of my children, myself, my practice." He was "absolutely overwhelmed with my situation," and he did not "think that [he was] of a frame of mind to try a homicide after taking it a little less than ... six weeks ago." He was only "sleeping about two hours a night." Although the case "is not particularly complex [and he is] familiar with the witnesses," he was not "ready to do this trial today."

Wynne also stated that he asked the prosecutor "last week when this occurred, to at least trail the thing until Thursday so I can get my kids put somewhere." However, the prosecutor opposed trailing the matter to Thursday because one of his witnesses was scheduled to have surgery next Monday and would not be available for a few weeks. To provide this witness with sufficient recovery time, Wynne wanted the trial continued until August 15. If the court would not grant a continuance until August 15, he needed "a couple of days" so he could arrange child care.

The prosecutor argued defense counsel had not shown good cause for a continuance. Wynne's child care difficulties "can be dealt with. We have jurors that are in that position fairly regularly that are asked to make arrangements." Also, when defendant asked for additional time to hire a private lawyer, the court advised defendant that the attorney who substituted in would need "to be ready for the previous trial date, which was approximately

---

[2]The facts are derived from the factual summary set forth by the Fifth DCA in its opinion of January 10, 2007, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). (LD 3 at 2-5.)

two weeks ago." When Wynne "did come in there was a vacation issue. That was accommodated." Furthermore, a continuance "will significantly prejudice the People's ability to prosecute this case." Detective William Andrews, the lead investigating officer, "is scheduled for surgery on Monday. He canceled a vacation for this week so he could be available to testify at the end of this week. He will not be available for the following several weeks." Also, the prosecution is "likely to lose several ... witnesses if the case is continued again," because the civilian witnesses are reluctant to testify, have been contacted and personally served four times, several of them live out of county and the prosecution had to make transportation accommodations for them. If the trial was continued, the People would "be significantly prejudiced because we would need to for now the fifth time try to track these people down, get them served, and get their cooperation on coming to testify in a trial that nobody wants to participate in."

Wynne responded that he did not "think [he's] competent-[He's] not in the frame of mind to start his trial" because his "mind is on [his] children." Wynne reiterated his request for, at a minimum, "a couple of days, to get my children situated" and "to get [his] case together."

Judge Sarkisian ruled as follows:

"And let me state, Counsel, I did reflect on your respective concerns and comments and issues you presented to the Court. And you both, both sides, present overwhelming concerns with respect to the position of the People, as well as your concerns, Mr. Wynne. And whatever the Court ultimately does, as I stated to you in chambers, cannot, nor will it be, I recognize, a perfect decision. It is very difficult to make a perfect decision under circumstances like this. But a decision nevertheless has to be made, weighing and balancing everything that's been said.

"And it seems to me *what the court is going to have to do, and is going to do, is to assign the matter for trial at this point, recognizing that the trial department, I'm sure, I'm sure-I'll underscore the words 'I'm sure'-accommodate your respective concerns in terms of your personal issues, Mr. Wynne, and your witness concerns, Mr. Skiles.* But to delay the matter to either this Thursday or to the 15th of August would not be the correct decision under the circumstances. And, on balance, it seems to me with the trial court managing your concerns, this case has to move forward.

"So that having been stated, unless Counsel wishes to be heard, the matter will be assigned to Department 71, Judge Hoff." (Italics added.)

During the afternoon of July 18, the parties appeared before Judge Gary Hoff. Appellant refused a plea offer and then Judge Hoff made the following ruling concerning trial scheduling:

"All right. *And I have spoken to counsel about scheduling issues. And I have indicated a willingness, and I don't think there is any objection by the People to delaying the start of the trial* beyond motions depending on the ruling on certain motions in this case that there may be, if the court were to rule one way on a certain motion, we would be ready to proceed as is. And if the Court were to rule another way on [a] particular motion, there is a possibility of stipulating to some limited testimony for purposes of trial, which could, um, give us a time frame in which *we could delay the commencement of the trial till Thursday.*" (Italics added.)

Wynne concurred, "That's correct."

The prosecutor said, "We start on Thursday, your Honor. I hope we have [a] jury by

the end of the week. If so, I believe we would be done with the trial by Friday [of] the following week."

After hearing various in limine matters, Judge Hoff granted Wynne's "request to trail the matter for jury selection till Thursday the 21st of July at 9 o'clock in the morning in this department."

On Thursday, July 21, voir dire was conducted and the jury was sworn.

No proceedings were held on Friday, July 22.

On Monday, July 25, and Tuesday, July 26, the prosecution presented its case. Defense counsel cross-examined each prosecution witness. William Andrews, the investigating officer who was scheduled to have surgery on July 21, was not called as a prosecution witness.

No proceedings were held on Wednesday, July 27.

The prosecution and the defense rested on the morning of Thursday, July 28. The defense did not call any witnesses. The jury began deliberating that afternoon.

The jury returned its verdict during the morning of Friday, July 29.

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petition

In his sole ground for relief, Petitioner claims the trial court abused its discretion by denying Petitioner's trial counsel a continuance.

A.  Review by State Courts

The claim was first presented on direct appeal to the Fifth DCA.  On January 10, 2007, the Fifth DCA denied the claim in a reasoned opinion. (LD 3.) Petitioner then pursued his claim in a petition for writ of habeas corpus in the California Supreme Court. (LD 4.) The petition was denied on March 21, 2007. (LD 5.) The California Supreme Court is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The appellate court analyzed and rejected the claim as follows:

> Appellant contends that Judge Sarkisian's refusal to continue the trial date constitutes an abuse of judicial discretion and that this ruling resulted in prejudicial infringement of his constitutional rights to due process of law and effective assistance of counsel. We are

unpersuaded.

At the outset, we must explain that appellant's argument appears to be premised on two misapprehensions concerning the record. First, appellant implies that Wynne told Judge Sarkisian that he needed a continuance until August 15 to resolve his familial problems and to prepare for trial. This is inaccurate. Wynne asked Judge Sarkisian for a continuance of unspecified duration but, at a minimum, "a day or two" to arrange childcare. Wynne suggested continuing the trial to August 15 because the prosecutor would not agree to trail the matter until Thursday since one of the People's witnesses, William Andrews, was scheduled for surgery on July 21. Wynne selected August 15 to provide Andrews with recovery time.

Second, appellant asserts that Judge Sarkisian unequivocally denied Wynne's continuance request and that his jury trial began on July 18 before Judge Hoff. In actuality, Judge Sarkisian stated that he was certain Judge Hoff would accommodate Wynne's need for time to attend to personal matters and Judge Hoff did just that. After ruling on a few in limine matters, Judge Hoff trailed the case until Thursday, July 21, thereby providing Wynne with the "day or two" he had requested to arrange childcare. On July 21, a jury was selected; no proceedings were held on July 22, 23 or 24. The prosecutor did not begin presentation of the People's case until Monday, July 25. Thus, Wynne had a full week after July 18 to prepare for trial before opening statements and presentation of evidence began.

We now turn to the salient questions: Did Judge Sarkisian abuse his discretion by sending the matter to Judge Hoff for trial instead of continuing the trial date? If so, was appellant prejudiced? We answer both of these questions in the negative.

Continuances are to be granted only upon a showing of good cause. (Pen.Code, § 1050, subd. (e).) Where, as here, the requesting party has failed to give the written notice required by subdivision (b) of section 1050, the trial court must undertake a two-step analysis. "It must first determine whether there was good cause for failure to comply with those requirements. If there was not good cause, the court must deny the motion. [Citation.] If the court finds there was good cause for failure to comply, it must then decide whether there is good cause for granting a continuance." *People v. Harvey* (1987) 193 Cal.App.3d 767, 771.) In determining whether good cause for a continuance has been shown, the judge must consider not only the benefit anticipated by the requesting party but also whether delay will be unduly burdensome on the opposing party, witnesses and the court. Above all, it is the trial court's responsibility to assess " ' "whether substantial justice will be accomplished or defeated by a granting of the motion." ' [Citations.]" ( *People v. Samayoa* (1997) 15 Cal.4th 795, 840.)

The question presented on appellate review " 'is whether the trial court abused its discretion in determining that there was no affirmative showing that the ends of justice required a continuance. [Citation.] Each case must be determined by its own particular facts. [Citation.]' [Citation.]" *People v. Wilson* (1965) 235 Cal.App.2d 266, 273.) Appellant bears the burden of demonstrating both an abuse of judicial discretion and prejudice. ( *People v. Samayoa, supra,* 15 Cal.4th at p. 840.) Whether denial of a continuance was so arbitrary as to violate due process depends upon the circumstances of the case. ( *People v. Courts* (1985) 37 Cal.3d 784, 791.) Abuse of discretion has not been shown. Appellant has not demonstrated that continuance of the trial date was necessary for Wynne to obtain sufficient time to resolve his childcare difficulties and prepare for trial. Wynne told Judge Sarkisian that on July 14 he asked the prosecutor to agree to trail the matter until Thursday, July 21, and the prosecutor refused. Wynne did not tell Judge Sarkisian that he needed until August 15 to arrange childcare and prepare for trial. Wynne acknowledged that the trial was not complicated and that he was familiar with the witnesses. When Judge Sarkisian sent the matter out for trial before Judge Hoff, he unequivocally stated that he was *certain* Judge Hoff would

accommodate Wynne's scheduling needs. Judge Hoff did so by trailing the matter until July 21, *which is exactly what Wynne originally asked of the prosecutor.* Wynne did not indicate to Judge Sarkisian or to Judge Hoff that trailing the matter until Thursday, July 21, would be insufficient. Thus, when Judge Sarkisian concluded that it was not necessary to continue the trial date in order for Wynne's scheduling needs to be met, he did not err. Judge Hoff provided the requested scheduling accommodation.

Additionally, the benefit to be obtained from a requested continuance must be balanced against the possible prejudice that could result therefrom. ( *People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) In this instance, continuing the trial date ran a substantial risk of prejudice to the People. The prosecutor expressed concern that already reluctant witnesses would not appear for trial if the date was reset and he was required to reserve them for a fifth time. Also, a prosecution witness was scheduled for surgery on July 21.

Appellant also failed to demonstrate prejudice. In the absence of a showing of prejudice to the defendant, a denial of a continuance request does not require reversal of a conviction. ( *People v. Samayoa, supra,* 15 Cal.4th at p. 840.) Here, the record does not show that Wynne was unprepared for trial or distracted by personal concerns on July 21, when jury selection occurred, or on July 25, when presentation of the evidence began. At no point after July 18 did Wynne indicate that he felt unprepared or that child care difficulties remained. While appellant points out that Wynne did not call any witnesses on his behalf, he has not shown that favorable witnesses existed and were available to testify. Appellant has not set forth what helpful testimony could have been elicited from such hypothetical defense witnesses. Furthermore, Wynne cross-examined each of the prosecution's witnesses. Appellant does not set forth any specific deficiencies in Wynne's cross-examination. Appellant also failed to set forth any viable legal defenses that Wynne failed to advance on his behalf. Appellant did not argue that Wynne's conduct on July 18 during the hearing on in limine motions was deficient. William Andrews was a prosecution witness and appellant has not argued that he was prejudiced by this witness's unavailability. Thus, appellant failed to establish that he was prejudiced by Judge Sarkisian's refusal to continue the trial date.

For these reasons, we conclude that Judge Sarkisian's refusal to continue the trial date was not an abuse of discretion and did not infringe any of appellant's constitutional rights.

(LD 3 at 5-9.)

B.  Applicable Federal Law

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." Ungar v. Sarafite, 376 U.S. 575, 589 (1964), *citing* Avery v. Alabama, 308 U.S. 444 (1940). "Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." Id., *citing* Chandler v. Fretag, 348 U.S. 3 (1954). "A trial court clearly abuses its discretion only if denial of the continuance was arbitrary or unreasonable." United States v. Wills, 88 F.3d 704, 711 (9th Cir.1996), *quoting* United States v. Torres-Rodriguez, 930 F.2d 1375, 1383 (9th Cir.1991). "There are no mechanical tests for deciding when a denial of a

1  continuance is so arbitrary as to violate due process. The answer must be found in the circumstances
2  present in every case, particularly in the reasons presented to the trial judge at the time the request is
3  denied." Ungar, 376 U.S. at 589.

4     C.  Review of Claim

5     In this case, it is clear the state court decision was not contrary to or an unreasonable
6  application of Supreme Court precedent. On July 18, 2005, Counsel stated he was not ready to
7  proceed with the trial on that date as scheduled. (LD 7 at 6-9.) Counsel requested a continuance at
8  least until July 21, 2005 to arrange childcare for his children due to family issues. Id. at 8. In light of
9  the prosecutor's objection to such a continuance based on one of the People's witnesses being
10 scheduled for surgery on July 21, he requested that the matter be continued to August 15, 2005, in
11 order to accommodate recovery of the witness. Id. Counsel further acknowledged the case was not
12 particularly complex, he knew the case and he was familiar with the witnesses. Id. at 9-10.

13    The prosecutor objected to the continuance arguing it would "significantly prejudice the
14 People's ability to prosecute this case." Id. at 11. The prosecutor stated that several witnesses were
15 unwilling to come to court and testify, and it had taken his office great effort to track them down,
16 serve them, and get their cooperation in coming to court that week. Id. at 12. He complained that a
17 continuance of another month would require his office to go through this exercise all over again, and
18 the efforts would likely prove unsuccessful. Id. at 9, 11-12.

19    The trial court duly considered defense counsel's request for a continuance. Id. at 15. The
20 court stated it had "reflect[ed] on [the parties'] respective concerns and comments and issues
21 presented to the court, . . . and . . . both sides present[ed] overwhelming concerns." Id. The court
22 acknowledged a perfect decision could not be reached under the circumstances. Id. at 15-16. After
23 weighing and balancing the concerns, the court ordered the matter assigned to another department
24 with the assurance that the assigned judge would accommodate defense counsel's concerns. Id. at 16.

25    As noted by the appellate court, the matter was then trailed by the assigned judge until July
26 21 thereby giving defense counsel several days to deal with his childcare issues. On that date, the
27 jury was selected. No proceedings were held until July 25. Therefore, defense counsel was given an
28 entire week to settle his personal affairs, which was what he had requested in the first place. This

was in addition to the five weeks he had already been on the case. Therefore, Petitioner has failed to demonstrate the trial court abused its discretion.

Moreover, Petitioner has failed to show any prejudice resulting from the trial court's decision. The record demonstrates that counsel was fully prepared for trial when it commenced. As noted by the appellate court, at no time did counsel indicate he was unprepared or was beset by ongoing family issues. In addition, Petitioner fails to state what counsel could have done differently had he been granted a continuance that would have altered the outcome of the trial.

In sum, Petitioner has failed to demonstrate that the state court rejection of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The petition should be denied.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 22, 2009**            /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE